1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10

| | |
|---|---|
| WAYNE JOHNSON, *et al.*, | CASE NO. C21-1602-LK |
| Plaintiffs, | ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT |
| v. | |
| GILBERT PETER, | |
| Defendant. | |

11
12
13
14
15
16

    This matter comes before the Court on a motion for default judgment filed by Plaintiffs Wayne and Bethany Johnson, a married couple. Dkt. No. 14. Defendant Gilbert Peter has not appeared or responded to the motion. The Court grants in part and denies in part the motion and enters a default judgment as set forth below.

17
18
19
20

## I.    BACKGROUND

21

    In August 2020, the Johnsons were introduced to Peter, who claimed he was a representative of a product called Terpkooler. Dkt. No. 1 at 3. Terpkooler is lockable cooler for preserving the potency of essential oils. *Id.* Peter successfully solicited an investment in Terpkooler from the Johnsons. *Id.*

22
23
24

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT - 1

1    In August 2020, the Johnsons and Peter signed a promissory note obligating the Johnsons

2    to loan Peter and "Gene Equity, LLC" $150,000 by August 18, 2020, in exchange for repayment—

3    with 10% interest and a "royalty" of $3.33 per Terpkooler sold—by November 18, 2020. *Id.* at 2–

4    3. The royalty payments to the Johnsons were to continue "into perpetuity." Peter personally

5    guaranteed payment of the promissory note. Dkt. No. 1-3 at 2—3.

6    In accordance with the terms of the promissory note, Mr. Johnson wired $150,000 in cash

7    to Peter on August 18, 2020. Dkt. No. 14-1 at 2, 10, 12. The borrowers have not repaid any of the

8    principal, interest, or royalties due under the promissory note. Dkt. No. 1 at 4–5.

9    Under the terms of the promissory note, failure to repay the loan by the due date constitutes

10    a default, at which point "[a]ll unpaid principal, accrued interest and other amounts owing

11    thereunder shall, at the option of the Lender" be "immediately collectible at a rate of 18% interest

12    from the date of the default, by Lender pursuant to applicable law." Dkt. No. 1-3 at 2. In addition,

13    the borrowers must pay "all costs of collection incurred by Lender, including, without limitation,

14    reasonable attorney's fees for consultation and litigation[.]" *Id.* at 2–3.

15    The Johnsons filed a complaint in this Court in November 2021 against Peter and Gene

16    Equity, LLC, alleging that they were in default on the promissory note. Dkt. No. 1 at 5. They

17    asserted claims for breach of contract, fraud, unjust enrichment, and conversion. *Id.* at 5–7.

18    When the defendants failed to appear or defend, the Johnsons moved for default, and the

19    Clerk of the Court entered default on January 12, 2022. Dkt. Nos. 8, 9. The Johnsons then moved

20    for a default judgment against both defendants. Dkt. No. 10. The Court denied the motion for

21    default judgment without prejudice and ordered the Johnsons to show cause why the Court should

22    not dismiss this matter for lack of subject matter jurisdiction because the complaint did not identify

23    the citizenship of each owner/member of Gene Equity, LLC or establish diversity jurisdiction. Dkt.

24    No. 11. The Johnsons promptly responded to the order to show cause and moved to sever defendant

Gene Equity, LLC. Dkt. No. 12. The Court granted their motion to sever, and Gene Equity LLC is no longer a party in this case. Dkt. No. 13. The Johnsons then filed an amended motion for default judgment against the remaining defendant. Dkt. No. 14.

## II.      DISCUSSION

### A.      Jurisdiction

The complaint alleges that the Johnsons are citizens of Washington, Peter is a citizen of Florida, and the amount in controversy exceeds $75,000. Dkt. No. 1 ¶¶ 1, 2, 6. Based on those allegations and the supporting evidence in the record, including the undisputed amount of the unpaid loan, this Court has subject matter jurisdiction under 28 U.S.C. § 1332.

The Johnsons allege that this Court also has personal jurisdiction over Peter pursuant to Washington's long-arm statute, Wash. Rev. Code § 4.28.185, "because [he] intentionally availed [himself] of the benefits and protections of Washington's law by conducting business in Washington; Plaintiffs' claims arise out [of Peter's] Washington related activities; and the exercise of jurisdiction would be reasonable." Dkt. No. 1 at 2. There are two categories of personal jurisdiction: (1) general jurisdiction and (2) specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–15 (1984). The Johnsons do not appear to contend that the allegations in the complaint support the exercise of general jurisdiction, so the Court addresses only specific jurisdiction.

Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies. *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1110 (9th Cir. 2004). Washington's long-arm statute extends personal jurisdiction "to the fullest extent" permitted by the due process clause. Wash. Rev. Code § 4.28.185; *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012). Constitutional due process requires that a defendant "have certain minimum contacts" with the forum state "such that the

maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). With respect to specific jurisdiction, the Ninth Circuit applies a "minimum contacts test" to evaluate whether the defendant has sufficient contacts with the forum to warrant the court's exercise of jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 603 (9th Cir. 2018) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). The "reasonableness" prong of the test must be assessed by balancing seven factors:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id* at 607. The above standards seek to ensure that a defendant will not be forced into a jurisdiction "solely as a result of random, fortuitous, or attenuated contacts." *Id.* at 603.

In this case, Peter conducted business in Washington by soliciting money and a contract from the Johnsons through multiple phone calls, emails, and text messages while the Johnsons resided in Washington. Dkt. No. 1 at 3. After he defaulted on the promissory note, Peter attempted to assuage the Johnsons' concerns by contacting them "continually . . . in writing and in phone calls" with promises to pay. *Id.* at 4. This case arises out of those persistent contacts and the promissory note that Peter executed with the Johnsons. While it may be burdensome for Peter to

defend in this forum, the inconvenience is not so great as to deprive him of due process, particularly given his purposeful efforts to extract investments from residents of this forum. Given that Peter is a Florida resident and Florida law applies, the sovereignty factor weighs slightly against a finding of personal jurisdiction here, but Florida's interests are protected by applying a choice-of-law analysis. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133 (9th Cir. 2003) (Although "'litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state'" and "this factor is important, it is not controlling." (quoting *Sinatra v. Nat'l Enquirer,* 854 F.2d 1191, 1199 (9th Cir. 1988))). The Johnsons "felt the effects of defendant's alleged breach in Washington, and thus Washington retains some interest in providing plaintiff a forum for redress." *Hansen v. Combined Transp., Inc.*, No. C13-1298RSL, 2013 WL 5969863, at *4 (W.D. Wash. Nov. 7, 2013). And although the Johnsons could have sued in Florida and a Florida court would be equally equipped to resolve this controversy efficiently, consideration of the most efficient judicial resolution is "no longer weighted heavily given the modern advances in communication and transportation." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998). Finally, this District provides the Johnsons the most convenient and effective relief because they live here and because they do not appear to have expected any need to travel to Florida as part of their business dealings with Peter.

Considering these factors in balance, the exercise of personal jurisdiction over Peter is reasonable. Accordingly, the Court has personal jurisdiction over him. *See Silver Valley Partners, LLC v. De Motte*, 400 F. Supp. 2d 1262, 1266 (W.D. Wash. 2005) ("[T]he purposeful and repeated communication with a Washington resident resulting in the investment of millions of dollars in out-of-state enterprises is sufficient to confer *in personam* jurisdiction over the out-of-state solicitor for claims arising out of such solicitations.").

**B.      Legal Standard**

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure. The Rule authorizes the Court to enter default judgment against a party that fails to appear or otherwise defend in an action. The court has discretion to grant or deny a motion for default judgment. *Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 511–12 (9th Cir. 1986). Default judgments are ordinarily disfavored, and cases should be decided on their merits if reasonably possible. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Courts may consider the following factors (the "*Eitel* factors") in deciding whether to grant a motion for default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72 (citation omitted).

On default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977)). However, the plaintiff must establish the relief to which it is entitled. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Accordingly, "necessary facts not contained in the pleadings, and the claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

**C.      The Johnsons Are Entitled to a Default Judgment**

The Court has considered the *Eitel* factors and finds that default judgment is appropriate in this case for the reasons laid out below.

1          1.      The possibility of prejudice to the Johnsons

2          The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default

3  judgment is not entered. *See, e.g., PepsiCo, Inc., v. California Sec. Cans*, 238 F. Supp. 2d 1172,

4  1177 (C.D. Cal. 2002). The Johnsons filed their suit in November 2021, and Peter has not

5  responded or otherwise put forth a defense in this action. The Johnsons are prejudiced because

6  they are left without a legal remedy absent entry of default judgment. *See, e.g.*, *Eve Nevada, LLC*

7  *v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *3 (W.D. Wash. Jan. 31, 2022). Therefore,

8  the first factor weighs in favor of entering default judgment.

9          2.      The merits of the Johnsons' substantive claims and the sufficiency of the complaint

10          In evaluating the second and third factors, the Court considers the merits of the plaintiff's

11  claims and whether the allegations in the complaint are sufficient to state a claim on which the

12  plaintiff may recover. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). "[F]ederal

13  courts sitting in diversity apply state substantive law and federal procedural law." *Feldman v.*

14  *Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78

15  (1938)). Therefore, the Court applies state law to the substantive issues regarding the claims. But

16  first, the Court must determine whether to apply the law of Washington, the forum state, or the

17  law of Florida, as set forth in the promissory note. Dkt. No. 1-3 at 3 (promissory note "shall be

18  governed by, and construed and enforced in accordance with, the laws of the State of Florida.").

19          When analyzing choice of law provisions like the one in the promissory note, federal courts

20  sitting in diversity apply the laws of the forum state. *First Intercontinental Bank v. Ahn*, 798 F.3d

21  1149, 1153 (9th Cir. 2015). To determine whether Washington or Florida law applies,

22  Washington's choice-of-law rules require this Court to assess: (1) whether there is an actual

23  conflict of laws between the two proposed states, and if so, (2) whether the choice-of-law provision

24  in the relevant agreement is effective. *See, e.g., Gierke v. Allstate Prop. & Cas. Ins. Co.*, No. C19-

0071-JLR, 2019 WL 4849494, at *3 (W.D. Wash. Oct. 1, 2019) (citing *Erwin v. Cotter Health Ctrs.*, 167 P.3d 1112, 1120 (Wash. 2007)). Washington courts will enforce a choice-of-law provision unless a three-part test is satisfied: (1) "without the provision, Washington law would apply" under section 188 of the Restatement (Second) of Conflicts of Laws; (2) "the chosen state's law violates a fundamental public policy of Washington"; and (3) "Washington's interest in the determination of the issue materially outweighs the chosen state's interest." *McKee v. AT&T Corp.*, 191 P.3d 845, 851 (Wash. 2008).

There is no conflict between Florida and Washington law regarding the elements of a breach of contract claim. In fact, the elements of a breach of contract claim are the same in both states. Under Florida law, "[t]he elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co.*, LLC, 175 F.3d 913, 914 (11th Cir. 1999). To establish a breach of contract claim under Washington law, a plaintiff must show that "the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 899 P.2d 6, 9 (Wash. 1995). The Court therefore applies Florida law pursuant to the promissory note's choice of law provision.

Applying Florida law, the Court finds that (1) the promissory note is a valid contract, (2) Peter breached the contract by not repaying the loan, and (3) the Johnsons have incurred damages based on his failure to pay. Dkt. No. 1 at 5–6; Dkt. No. 14-1 at 2. Therefore, the Johnsons' breach of contract claim has merit.[1]

3.    The sum of money at stake in the action

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in

---

[1] Because the Johnsons are entitled to the remedies they seek based on their breach of contract claim, the Court need not decide the merits of their other claims.

relation to the seriousness of defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. This requires the court to assess whether the recovery sought is proportional to the harm caused by defendants' conduct. Default judgment is disfavored where the sum of money at stake is disproportionate or otherwise unreasonable in relation to defendant's conduct. *See Getty Images (US), Inc. v. Virtual Clinics*, No. C13-0626JLR, 2014 WL 358412, at *4 (W.D. Wash. Jan. 31, 2014). The Johnsons seek $150,000 in principal, $7,913.50 in attorney's fees, $662.97 in costs, $29,458.25 in prejudgment interest, and post-judgment interest until the amount is paid. Dkt. No. 14-1 at 3. For the reasons laid out elsewhere in this Order, the Court finds that the Johnsons are entitled to recover these sums, with the following exceptions: (1) they are not entitled to certain attorney's fees; (2) they are entitled to simple, not compound, pre-judgment interest; and (3) the rate of interest they seek post-judgment is determined by 28 U.S.C. § 1961. The total amount is still substantial, however, as the Johnsons are entitled to much of the attorney's fees they seek under the promissory note, as well as the unpaid principal, interest, and costs. These amounts are proportional to and reflective of the amount the Johnsons have lost because of the unpaid loan. This factor therefore weighs in favor of default judgment.

4.    The possibility of a dispute concerning material facts

As for the fifth factor, no genuine issue of material fact exists. Once default is entered, well-pleaded factual allegations in the operative complaint are taken as true except for the allegations relating to damages. *TeleVideo Sys., Inc.*, 826 F.2d at 917–18.

5.    Whether the default was due to excusable neglect

Turning to the sixth factor, the record contains no indication that Peter's default was due to excusable neglect. Peter has been served and given sufficient notice of this action. Dkt. Nos. 6,

14-2 at 2.[2] Although the record does not show that the Johnsons served Peter with their motion for default judgment, they were not required to do so since Peter has not appeared in this action. LCR 55(b)(4). Because there is no evidence of excusable neglect, this *Eitel* factor favors the entry of a default judgment.

> 6.    The strong policy underlying the federal rules of civil procedure favoring decisions on the merits

Finally, the Court is aware that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive" because Rule 55 allows a court to issue a default judgment if defendant fails to appear and defend. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (quoting *Kloepping v. Fireman's Fund*, No. C94-2684-THE, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996)). Accordingly, the policy in favor of decisions on the merits does not, by itself, preclude the entry of default judgment especially where, as here, the defendant has failed to appear or defend and the other *Eitel* factors weigh in favor of entering a default judgment.

In sum, the Court finds that the *Eitel* factors weigh in favor of entry of default judgment in favor of the Johnsons and that default judgment is therefore warranted.

**D.    The Johnsons Are Entitled to Most of the Relief They Seek**

Having found that entry of default judgment is warranted, the Court turns to the issue of damages. The Court does not presume the truth of any factual allegations related to the amount of damages. *TeleVideo Sys., Inc.*, 826 F.2d at 917-18. In addition, a plaintiff must prove all damages

---

[2] Peter apparently used an incorrect address in the promissory note: his address is listed as "6042 NW 84th Terrace, Parkland, FL 33067." Dkt. No. 1-3 at 3. The Johnsons served Peter at "6041 NW 84th Terrace, Parkland, FL 33067." Dkt. No. 14-2 at 2. This latter address is the same one Peter used in his bankruptcy proceedings in the United States Bankruptcy Court for the Southern District of Florida, of which the Court takes judicial notice. *In Re Gilbert J. Peter*, Case No. 22-14445-PDR, Dkt. No. 1 (Bankr. S.D. Fla. June 6, 2022) (listing Peter's address as "6041 NW 84 Terrace, Parkland, FL 33067"). The bankruptcy court dismissed Peter's petition in July 2022 due to his failure to meet certain deadlines. *See id.*, Dkt. No. 22 (July 26, 2022).

sought in the complaint, LCR 55, and "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings," Fed. R. Civ. P. 54(c).

The Johnsons request damages of (1) $150,000 in unpaid principal; (2) pre-judgment interest of $29,458.25, based on a default date of November 18, 2020 and the 18% annual interest rate provided in the "Default" paragraph of the promissory note; (3) attorney's fees in the amount of $7,913.50; (4) costs of $662.97; and (5) recuring post-judgment annual interest of 18% until judgment is satisfied. Dkt. No. 14 at 3; *see also* Dkt. No. 1 at 5–8. The Court evaluates each of those requests in turn.

      1.   <u>The Principal Amount</u>

In diversity cases, choice of law is determined on an "issue by issue basis." *Them v. ManhattanLife Assurance Co. of Am.*, No. C19-6034-RBL, 2020 WL 4788022, at *2 (W.D. Wash. Aug. 18, 2020) (internal quotation omitted). For that reason, the Court considers the choice of law issue again to determine damages even though it has already determined that Florida law applies to the substance of the breach of contract claim.

Following Washington's choice of law rules, there is no conflict between Florida and Washington law regarding the availability of damages. Under Florida law, a party injured by a breach of contract is entitled to recover those damages that "naturally flow from the breach and can reasonably be said to have been contemplated by the parties at the time the contract was entered into." *Mnemonics, Inc. v. Max Davis Assocs., Inc.*, 808 So. 2d 1278, 1280 (Fla. Dist. Ct. App. 2002). Similarly, under Washington law, the injured party is entitled to damages that "flow naturally from the breach," including "such items as loss of the bargain and lost profits." *Valve Corp. v. Sierra Entm't Inc.*, 431 F. Supp. 2d 1091, 1101 (W.D. Wash. 2004). Because there is no conflict, the Court applies Florida law to the issue of damages pursuant to the choice of law provision in the promissory note.

Under the terms of the promissory note, Peter is liable for the unpaid principal upon default. Dkt. No. 1-3 at 2. Since neither borrower has paid any of the principal amount due, the unpaid principal is $150,000. Dkt. No. 14-1 at 2. Accordingly, the Johnsons alleged in their complaint that the borrowers were in breach by failing to pay $150,000 in principal. Dkt. No. 1 at 5. Peter has not disputed that allegation. The Johnsons' request for damages in the principal amount of $150,000 is well-supported and is granted.

2.   Attorney's Fees

The Johnsons seek their attorney's fees pursuant to the promissory note, which states that if the borrower defaults, the lender "agrees to pay all costs of collection incurred by Lender, including, without limitation, reasonable attorney's fees for consultation and litigation[.]" Dkt. No. 1-3 at 2–3. There is no conflict between Washington and Florida law on the enforceability of the attorney's fees provision in the promissory note. *See, e.g., Bell v. U.S.B. Acquisition Co., Inc.*, 734 So. 2d 403, 406 (Fla. 1999) (Florida law provides that attorney's fees provisions in contracts are enforceable); Wash. Rev. Code § 4.84.330 (providing for attorney's fees in suits to enforce a contract). Therefore, the Court applies Florida law to that issue pursuant to the promissory note and finds that the attorney's fees provision is enforceable under Florida law. *See, e.g., Bell*, 734 So. 2d at 406.

The Johnsons seek attorney's fees of $7,913.50, which they have paid during the pendency of this case. Dkt. No. 14-1 at 3. The promissory note requires that the fees be "reasonable." Dkt. No. 1-3 at 3. Like Washington courts, Florida courts use the lodestar method in calculating a reasonable attorney's fee amount. *See Bell*, 734 So. 2d at 406; *Johnson v. CitiMortgage, Inc.*, No. 2:13-CV-00037-RSM, 2014 WL 2207619, at *2 (W.D. Wash. May 28, 2014). The lodestar method requires courts to multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate for the services of the prevailing party's attorneys. *Bell*, 734 So. 2d at 406;

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT - 12

1    *Chuong Van Pham v. City of Seattle, Seattle City Light*, 151 P.3d 976, 981 (Wash. 2007).

2         The fee applicant bears the burden of proving the reasonableness of both the hourly rates

3    requested and the time expended. *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150–51

4    (Fla. 1985). Reasonable attorney's fees are those fees charged at prevailing "market rates," i.e.,

5    "the rate charged in th[e relevant] community by lawyers of reasonably comparable skill,

6    experience and reputation, for similar services." *Id.* at 1151. "The general rule is that the 'relevant

7    market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the

8    place where the case is filed.'" *ACLU of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999)

9    (quoting *Cullens v. Georgia Dep't. of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994)).

10        In this case, counsel charged an hourly rate of $245. Dkt. No. 14-1 at 17. Plaintiffs' counsel

11   has not submitted evidence that the requested rate is in line with those prevailing in the community

12   or about his experience in this area.[3] Nevertheless, the Court finds that rate is reasonable and

13   consistent with the rate charged in similar cases in this district. S*ee, e.g., McVeigh v. Climate*

14   *Changers Inc.*, No. C16-5174-RJB, 2017 WL 497602, at *4 (W.D. Wash. Feb. 7, 2017) (finding

15   rate of $400 per hour to be reasonable in a case that involved a breach of contract and other claims);

16   *Nat'l Prod., Inc. v. Aqua Box Prod., LLC*, No. 12-605-RSM, 2013 WL 12106900, at *2 (W.D.

17   Wash. Mar. 15, 2013) (approving a $290 hourly rate for a third-year associate and noting that

18   courts in this district had previously awarded fees in the range of $175 to $300 for junior-level

19   associates).

20        Although the hourly rate is reasonable, the time that Plaintiffs' counsel has billed for

21   clerical tasks such as filing, tasks that could have been assigned to a paralegal, or non-legal tasks

22   is not recoverable. *See, e.g., McBride v. Legacy Components, LLC*, No. C8:15-cv-193-EAK-TGW,

23

24   ---

[3] According to the website of the Washington State Bar, Plaintiffs' counsel was admitted to practice in Washington in 2019. *See* https://www.mywsba.org/PersonifyEbusiness/LegalDirectory/LegalProfile.aspx?Usr_ID=000000054884.

2018 WL 4381181, at *2 (M.D. Fla. 2018). Therefore, the Court does not award attorney's fees for the following time entries for such tasks, which total 1.7 hours of time:

- November 10, 2021 entry for mailing letter and complaint (0.5 hours)
- December 6, 2021 entry for service-related tasks (0.1 hours)
- December 22, 2021 entry for service-related tasks (0.2 hours)
- December 28, 2021 entry for filing documents with the Court (0.5 hours)
- January 11, 2022 entry for filing documents with the Court (0.2 hours)
- February 1, 2022 entry for calling the Court for a status update (0.2 hours)

Dkt. No. 14-2 at 7–9.

Because Plaintiffs' counsel block billed other time entries, it is not possible to determine how much time was spent on non-recoverable tasks on other days. The following entries contain time for both legal and clerical tasks:

- November 29, 2021 entry for applying for ECF filing access and legal tasks (4 hours)
- January 12, 2022 entry for filing and emailing clients (0.5 hours)
- January 14, 2022 entry for redactions, transmissions, and legal tasks (2.5 hours)
- January 16, 2022 entry for filing and legal tasks (2.5 hours)

Dkt. No. 14-2 at 7–10. The Court determines that two hours of that block billed time appears attributable to tasks that are clerical in nature, and reduces this aspect of the fees request accordingly. *See Ceres Env't Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012) (noting that Florida courts have "approved across-the-board reductions in block-billed hours to offset the effects of block billing").

Finally, "[r]edundant, excessive, or otherwise unnecessary hours should not be included in the calculation of hours reasonably expended." *Perez v. Carey Int'l, Inc.*, 373 F. App'x 907, 910–11 (11th Cir. 2010). The Court will not award fees incurred as a result of the need to draft, file, and serve the response to the Court's order to show cause or the second motion for default judgment. *See* Dkt. No. 11 at 2 ("Because Plaintiffs' complaint fails to identify the citizenship of each owner/member of Gene Equity, LLC, the complaint fails to provide sufficient allegations to

establish diversity jurisdiction."); *see also* Dkt. Nos. 12–14. "These fees arise only out of Plaintiffs' counsels' need to correct their mistakes and are, therefore, both excessive and redundant." *Leblanc v. USG7, LLC*, No. 6:12-CV-1235-ORL-41TBS, 2016 WL 1358529, at *2 (M.D. Fla. Apr. 6, 2016); *Aldana v. Audiology Distrib., LLC*, No. 19-80339, 2020 WL 9549667, at *11 (S.D. Fla. Feb. 10, 2020), *report and recommendation adopted in relevant part*, No. 9:19-CV-80339, 2020 WL 9549535 (S.D. Fla. Feb. 28, 2020) ("[F]ees incurred to correct counsel's errors or to respond to an Order to Show Cause are not recoverable."). Accordingly, the Court does not award fees for the following time entries, which total 7.5 hours of time:

- February 8, 2022 entry for drafting response to order to show cause (2.5 hours)
- February 9, 2022 entry for drafting amended complaint and revising draft response (2 hours)
- February 11, 2022 entry for further revisions to response (1 hour)
- March 9, 2022 entry for revising amended motion for default (2 hours)

In sum, the Court finds that Plaintiffs' counsel has performed 21 compensable hours of work on this matter at the reasonable rate of $245 per hour, and therefore awards Plaintiffs $5,145.00 in fees.

### 3.   Costs

As set forth above, the Johnsons are prevailing parties entitled to their fees and costs. An award of standard costs in federal district court is normally governed by Federal Rule of Civil Procedure 54(d), including in diversity cases like this one. *See In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1120 n.2 (9th Cir. 1987). Under Federal Rule of Civil Procedure 54(d)(1), a prevailing party is entitled to recover costs as a matter of course unless a court order or statute provides otherwise. A court may tax as costs those expenses enumerated in 28 U.S.C. § 1920. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987).

The Johnsons seek costs of $662.97, which they have paid during the pendency of this case. Dkt. No. 14-1 at 3. Those costs include $180.00 for service of process, $57.97 for overnight

mailing of a demand letter to Peter, and $425 for the Court's filing fee. Dkt. No. 14-1 at 18, 21–22. Pursuant to 28 U.S.C. § 1920, the filing fee and service costs are properly taxable.

While it less clear that the cost of the overnight mailing is recoverable under the statute, it is recoverable under the contract. A contract can permit a court to award costs beyond those allowed by federal law. *See Crawford Fitting Co.*, 482 U.S. at 439. This Court, sitting in diversity, looks to state law to determine whether costs beyond those authorized by 28 U.S.C. § 1920 can be awarded under the parties' contract. *See, e.g.*, *Hunt v. Zuffa*, 528 F. Supp. 3d 1180, 1185–86 (D. Nev. 2021). Under both Florida and Washington law, the Court is permitted to award "all" reasonable costs incurred as a result of the collection if the parties so agreed in their contract, as the parties did in this case. Dkt. No. 1-3 at 2; *see also Pellegrino v. Koeckritz Dev. of Boca Raton, LLC*, No. 08-80164-CIV, 2008 WL 6128747, at *4 (S.D. Fla. Nov. 24, 2008) (because the contract language regarding costs was "without any express or implied limitations," the court found the parties intended that costs beyond those taxable under § 1920 were to be awarded); *Royal Palace Hotel Assocs. v. Internat'l Resort Classics*, 178 F.R.D. 595, 602 (M.D. Fla. 1998) (explaining that a party can recover costs "from another party who has contracted to pay them"); *Renfrow v. Draper*, 232 F.3d 688, 695–96 (9th Cir. 2000) (district court erred in only awarding those costs allowable under § 1920 when the provisions of the parties' divorce decree allowed for other costs). Therefore, the Court awards the costs of mailing under the contract, awards the other costs sought under 28 U.S.C. § 1920, and awards the Johnsons a total of $662.97 in costs.

4.   Pre-judgment Interest

Pre-judgment interest is a substantive part of a plaintiff's claim, and state law therefore generally governs the award of pre-judgment interest in diversity actions. *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949, 961 (9th Cir. 2008). The Court once again applies a choice of law analysis. Here, there does not appear to be a conflict of laws between

Washington and Florida. Under Florida law, an annual interest rate of over 18 percent on an obligation of less than $500,000 is usurious. Fla. Stat. § 687.02(1). Washington's maximum rate of 12 percent does not apply to a transaction—like the one here—that was "primarily for . . . investment[] or business purposes." Wash. Rev. Code §§ 19.52.020, -.080.

Even if the Johnsons have not carried their burden to show that this investment transaction exception applies, *see PLU Invs., LLC v. Intraspect Grp., Inc.*, No. C10-626RSL, 2010 WL 4094335, at *3 (W.D. Wash. Oct. 14, 2010), such that there exists a conflict of laws, the Court finds that application of the parties' contractual choice of law is warranted. Washington's usury statute was enacted "in recognition of the duty to protect [Washington] citizens from oppression generally" and "to protect the residents of this state from debts bearing burdensome interest rates" while "better effect[ing] the policy of this state to use this state's policies and courts to govern the affairs of [Washington] residents and the state." Wash. Rev. Code § 19.52.005. "Indeed, our legislature views this policy as so fundamental as to include a choice of law provision extending the territorial application of the usury law to out-of-state contracts." *Whitaker v. Spiegel Inc.*, 623 P.2d 1147, 1151, *amended*, 637 P.2d 235 (Wash. 1981); *see also* Wash. Rev. Code § 19.52.034 ("Whenever a loan or forbearance is made outside Washington state to a person then residing in this state the usury laws . . . shall be applicable in all courts of this state to the same extent such usury laws would be applicable if the loan or forbearance was made in this state."). However, both the declaration of policy in Section 19.52.005 and the plain language of Section 19.52.034 indicate that "Washington courts are not free to engage in conflict of law analysis to determine whether or not the parties' own choice of law provision should apply" only where "the *debtor* was a resident of Washington at the time the loan was made[.]" *Whitaker v. Spiegel Inc.*, 623 P.2d 1147, 1151, *amended*, 637 P.2d 235, 235 (Wash. 1981) (emphasis added). Because the debtor here is a Florida resident, applying Florida law would not violate a fundamental public policy of Washington. *See*

*Golden Horse Farms, Inc. v. Parcher*, 629 P.2d 1353, 1355 (Wash. Ct. App. 1981) ("The statute is not pertinent to the resolution of this action because . . . the payor[] is a Canadian corporation, not 'a person then residing in this state.'"). Therefore, the Court applies Florida law.

Under Florida law, a plaintiff is entitled to prejudgment interest as a matter of law. *SEB S.A. v. Sunbeam Corp.*, 476 F.3d 1317, 1320 (11th Cir. 2007). Florida's statutory rate applies unless the parties have agreed to a different rate by contract; if so, the contractual rate applies. *Republic Servs., Inc. v. Calabrese*, 939 So. 2d 225, 226 (Fla. Dist. Ct. App. 2006).

The Johnsons seek pre-judgment interest under the "Default" paragraph of the promissory note. Dkt. No. 14 at 3. That paragraph states that upon default, "[a]ll unpaid principal, accrued interest and other amounts owing thereunder shall, at the option of the Lender, be immediately collectible at a rate of 18% interest from the date of the default, by Lender pursuant to applicable law." Dkt. No. 1-3 at 2. The Johnsons request $29,458.25, which they contend represents 18 percent interest per annum starting on the default date of November 18, 2020. Dkt. No. 14 at 3.

Because the parties' contract provides for prejudgment interest at the rate of 18% annually, the Court awards prejudgment interest at that rate. *See, e.g., Landstar Ranger, Inc. v. Dalton Logistics, Inc.*, No. 3:16-CV-741-J-39PDB, 2017 WL 3113450, at *5 (M.D. Fla. Jan. 23, 2017), *report and recommendation adopted*, 2017 WL 3113451 (M.D. Fla. Feb. 27, 2017) (approving 18% prejudgment interest rate). Prejudgment interest began to accrue on November 18, 2020, the date the loan was in default. Dkt. No. 1 at 5; *see also Butler Plaza, Inc. v. Allen Trovillion, Inc.*, 389 So.2d 682, 683 (Fla. Dist. Ct. App. 1980) ("In a contract action, it is proper to award interest from the date the debt was due."). Therefore, the Johnsons are entitled to prejudgment interest accruing on the principal amount of $150,000 at an annual rate of 18 percent beginning on November 18, 2020, through the date the judgment is signed. *See, e.g., SEB S.A.*, 476 F.3d at 1320 ("[P]rejudgment interest is, by definition, interest that accrues until judgment is rendered.")

(cleaned up).

The Johnsons also seek interest "compounding annually" starting on the default date. Dkt. No. 14-2 at 3. However, the promissory note does not provide for compounding interest. Dkt. No. 1-3 at 2. Where a contract does not specify whether the interest will be compounding or simple, Florida law requires that the Court apply simple interest. *See, e.g., Megdal Assoc., LLC v. La-Z-Boy Inc.*, No. 14-81476-CIV-ZLOCH, 2017 WL 6384010, at *1 (S.D. Fla. Mar. 1, 2017). For that reason, the Court applies simple, not compounding, interest. Applying simple interest at a rate of 18% per year, the Johnsons are entitled to pre-judgment interest in the amount of $57,402.73.[4]

5.   Post-judgment Interest

The Johnsons seek post-judgment interest at the contractual rate of 18% until the judgment is satisfied. Dkt. No. 14 at 3. As noted above, they are not entitled to compounding interest.

Under the doctrine of merger, when "a valid and final judgment for the payment of money is rendered in favor of the plaintiff, the original claim of the plaintiff is extinguished and a new cause of action on the judgment is substituted for it." Restatement (Second) of Judgments § 47. Reflecting that notion, numerous circuits have concluded that once such substitution occurs, the federal rate for post-judgment interest under 28 U.S.C. § 1961 presumptively applies. *See Sovereign Bank v. REMI Cap., Inc.*, 49 F.4th 360, 368 (3d Cir. 2022); *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 456–460 (5th Cir. 2013); *Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1275–77 (10th Cir. 2010); *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1023–24 (9th Cir. 2004); *Carte Blanche (Sing.) Pte., Ltd. v. Carte Blanche Int'l, Ltd.*, 888 F.2d 260, 268–70 (2d Cir. 1989). To overcome this presumption, courts—including those in Florida—have required the parties or arbitrators to unambiguously express their intent to replace the federal

---

[4] The Johnsons' motion seeks $29,458.25 in prejudgment interest, but additional time has passed since they filed their motion. Dkt. No. 14-3 at 2.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT - 19

rate for the post-judgment period. *See, e.g., Tricon Energy*, 718 F.3d at 457; *Newmont U.S.A.*, 615 F.3d at 1276–77; *Fid. Fed. Bank*, 387 F.3d at 1023; *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 101–02 (2d Cir. 2004); *CCUR Aviation Fin., LLC v. South Aviation, Inc.*, No. 21-cv-60462, 2022 WL 225851, at *4 (S.D. Fla. Jan. 26, 2022) (parties can contract around the statutory rate if their contract includes "language clearly, unambiguously, and unequivocally stating the parties' intent to bypass § 1961") (quoting *In re Trigeant Holdings, Ltd.*, 523 B.R. 273, 278 (Bankr. S.D. Fla. 2015)).

The parties' contract in this case contains no such express intent and does not explicitly reference post-judgment interest at all. Accordingly, the Court awards the Johnsons post-judgment interest accruing at the rate set forth in 28 U.S.C. § 1961 from the date judgment is entered until fully paid.

## III.   CONCLUSION

For all of the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART the Johnsons' motion for default judgment. Dkt. No. 14.

Default judgment shall enter in favor of Wayne and Bethany Johnson and against Defendant Gilbert Peter, awarding the Johnsons:

1. A total of $150,000 in principal;

2. A total of $5,145.00 for attorney's fees.

3. A total of $662.97 in costs.

4. Pre-judgment interest of $57,402.73.

//
//
//
//

5.  Post-judgment interest accruing at the rate set forth in 28 U.S.C. § 1961 from the date

    judgment is entered until fully paid.

Dated this 3rd day of January, 2023.

_Lauren King_

Lauren King
United States District Judge